UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANDREA P.,

       Plaintiff,

                          **Case No. 3:21-cv-307**

    v.                       **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

       Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Andrea P. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On November 23, 2018, Plaintiff filed her application for benefits, alleging that she has been disabled since September 22, 2017. R. 81, 95, 193−94. The application was denied initially and upon reconsideration. R. 98−102, 104−06. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 118−19. Administrative Law Judge ("ALJ") Raymond Rogers held

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

a hearing on March 26, 2020, at which Plaintiff, who was represented by counsel, testified, as

did a vocational expert. R. 36−68. In a decision dated April 13, 2020, the ALJ concluded that

Plaintiff was not disabled within the meaning of the Social Security Act from September 22,

2017, Plaintiff's alleged disability onset date, through the date of that decision. R. 19−31. That

decision became the final decision of the Commissioner of Social Security when the Appeals

Council declined review on November 19, 2020. R. 1−6. Plaintiff timely filed this appeal

pursuant to 42 U.S.C. § 405(g). ECF No. 1. On January 25, 2021, Plaintiff consented to

disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and

Rule 73 of the Federal Rules of Civil Procedure. ECF No. 4.[2] On January 26, 2021, the case was

reassigned to the undersigned. ECF No. 5. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli

v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham."};

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is

> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

## B.  Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 47 years old on her alleged disability onset date. R. 30. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between September 22, 2017, her alleged disability onset date, and the date of the decision. R. 21.

At step two, the ALJ found that Plaintiff's bipolar disorder, personality disorder, anxiety, and depression were severe impairments. R. 22. The ALJ also found that Plaintiff's obesity was not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 22–24.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to various non-exertional limitations. R. 24–30. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an administrative clerk. R. 29–30.

At step five, the ALJ found that a significant number of jobs exist in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 30–31. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 22, 2017, her alleged disability onset date, through the date of the decision. R. 31.

Plaintiff disagrees with the ALJ's findings at steps three, four, and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 14; *Plaintiff's Reply*

*Brief*, ECF No. 16. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 15.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Sanjeevani Jain, M.D.

On December 7, 2018, psychiatrist, Sanjeevani Jain, M.D., who had treated Plaintiff since April 2013, R. 427, 429, completed two 2-page, check-the-box, fill-in-the blank forms regarding Listings 12.04, which addresses depressive, bipolar, and related disorders, and 12.06, which addresses anxiety and obsessive-compulsive disorders. R. 426–29.[3] As to the symptoms of a depressive disorder under Listing 12.04, Dr. Jain indicated that Plaintiff suffers the following symptoms: depressed mood, diminished interest in almost all activities, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty in concentrating or thinking. R. 428. As to the symptoms of a bipolar disorder under this listing, Dr. Jain indicated that Plaintiff suffers the following symptoms: pressure of speech, flight of ideas, decreased need for sleep, distractibility, and increase in goal-directed activity or psychomotor agitation. *Id*. Dr. Jain also indicated that Plaintiff had marked limitations in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. R. 429. Dr. Jain also indicated that

---

[3] The Court will address the requirements of these listings later in this decision, but notes that both Listing 12.04 and Listing 12.06 require that a claimant satisfy the requirements in both paragraphs A and B or paragraphs A and C. R. 426, 428; *see also* 20 C.F.R. §§ 12.04, 12.06 (eff. 3/14/18 to 4/1/21).

Plaintiff's mental disorder was "serious and persistent" because there was evidence of both (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of Plaintiff's mental disorder; and (2) marginal adjustment, that is, Plaintiff has minimal capacity to adapt to changes in her environment or to demands that are not already part of Plaintiff's daily life. *Id*. *See* Listing 12.04C. According to Dr. Jain, Plaintiff's condition had begun on April 23, 2013, and was expected to persist for at least a year from that date. *Id*.

Dr. Jain also addressed an anxiety disorder under Listing 12.06, indicating that Plaintiff suffered the symptoms of restlessness, fatigue, irritability, muscle tension, and sleep disturbance. R. 426. According to Dr. Jain, Plaintiff had moderate limitations in all areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. R. 427. Dr. Jain also indicated that Plaintiff's anxiety disorder was "serious and persistent" because there was evidence of both (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of Plaintiff's mental disorder; and (2) marginal adjustment, that is, Plaintiff has minimal capacity to adapt to changes in her environment or to demands that are not already part of Plaintiff's daily life. *Id*. Dr. Jain again indicated that Plaintiff's anxiety disorder had begun on April 24, 2013, and was expected to persist for at least a year from that date. *Id*.

On March 27, 2020, Dr. Jain again completed two 2-page, check-the-box, and fill-in-the-blank form, addressing Listings 12.04 and 12.06. R. 545−48. In addressing Listing 12.04, Dr. Jain indicated that Plaintiff suffered depressed mood, diminished interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, decreased energy, feelings of guilt

or worthlessness, and difficulty concentrating or thinking. R. 545. Plaintiff manifested pressure of speech, flight of ideas, decreased need for sleep, distractibility, and increase in goal-directed activity or psychomotor agitation. *Id*. Plaintiff had a mild limitation in the areas of understanding, remembering, or applying information, but extreme limitations in the areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. R. 546. According to Dr. Jain, Plaintiff's mental disorder was "serious and persistent" because there was evidence of both (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of Plaintiff's mental disorder; and (2) marginal adjustment, that is, Plaintiff has minimal capacity to adapt to changes in her environment or to demands that are not already part of Plaintiff's daily life. *Id*. Dr. Jain again noted that the earliest onset of Plaintiff's condition was April 23, 2013, and that she expected Plaintiff's condition to persist for at least a year from that date. *Id*.

In addressing Listing 12.06, Dr. Jain indicated that Plaintiff's symptoms of anxiety consisted of restlessness, fatigue, irritability, muscle tension, and sleep disturbance. R. 547. Plaintiff had only a mild limitations in understanding, remembering, or applying information, but extreme limitations in the areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. R. 548. Dr. Jain again indicated that Plaintiff's mental disorder was "serious and persistent" because there was evidence of both (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of Plaintiff's mental disorder; and (2) marginal adjustment, that is, Plaintiff has minimal capacity to adapt to changes in her environment or to demands that are not already part of Plaintiff's daily life. *Id*. The earliest

10

onset of Plaintiff's condition was April 23, 2013, but Dr. Jain did not indicate whether Plaintiff's condition was expected to persist for at least a year from the onset date. *Id*.

###   B.   Marc Friedman, Ph.D.

On December 13, 2018, Marc Friedman, Ph.D., conducted a consultative psychological examination of Plaintiff. R. 430–32. Dr. Friedman noted that Plaintiff was appropriately dressed, but poorly groomed. R. 430. Plaintiff's husband drove her to the appointment because, although Plaintiff had a driver's license, she had quit driving because of severe anxiety; she did not travel alone. *Id*. Plaintiff reported frequent panic attacks when she must leave home, depression, limited motivation, and difficulty sleeping without medication.  *Id*. She also reported psychiatric treatment for depression and anxiety for the prior 25 years. *Id*. Although Plaintiff had never been hospitalized for the conditions, she had been admitted to an intensive outpatient program for several weeks, followed by regular outpatient treatment. *Id*. Upon mental status examination, Dr. Friedman noted the following:

> She spoke using complete sentences. Speech was clear and understandable. Associations were generally logical and sequential and there were no signs of a thought disorder. The volume of speech was appropriate. Speech was goal oriented and relevant. She did make a few spontaneous comments. She did not initiate, but was able to sustain conversation. She was able to follow the topic of a conversation. Her eye contact was adequate during the interview. Mood was extremely anxious, and affect was severely constricted. Her facial expression was extremely tense. She did not display a sense of humor. She is not reporting hallucinations and her thinking does not appear to be delusional. She is not reporting suicidal ideation or intent. She was unaware of the date, but she knew the location. In terms of long-term memory, she had some difficulty recalling specific dates of past events. She had little difficulty remembering some events from her childhood and teenage years. She was able to recall the current president and previous president. She also remembered Mr. Clinton. She was able to remember what she ate for dinner yesterday. In terms of short-term memory, she was able to remember 2 out of three objects after a three minute delay, and 2 objects after a five-minute delay. In terms of working memory, she was able to correctly repeat 5 digits and say 3 digits in reverse order. She was unable to perform serial sevens correctly, and was very slow. She was unable to perform serial threes correctly. She had difficulty concentrating on these tasks. She was able to spell "WORLD" correctly, and backwards. She was

unable to calculate 6 times $.25, and she was very slow, and I had to repeat the problem twice. She had little difficulty with abstraction. Fund of information was somewhat limited. For example, she did know who Martin Luther King Jr. was, she did not know where Brazil is located, and did know who wrote Hamlet. In terms of judgment, if she was the first person to notice a fire starting in a movie theater, she would scream. If she found a letter in the street addressed to someone else she would mail it. Based on her history I would estimate that her judgment is somewhat limited, and impulse control is somewhat limited. Overall intellectual functioning is estimated to be within the low average/average range. She did appear to be trying her best during her problem-solving attempts. She is able to follow multi step directions. Her persistence in completing tasks was adequate. Social interaction skills were limited during the interview. Long-term memory appears to be unimpaired. Short-term memory appears to be mildly impaired. Working memory appears to be mildly impaired. Ability to concentrate was impaired.

R. 431. Plaintiff's reported daily activities and interests were as follows:

She usually wakes up around 12PM, after getting a decent nights [sic] sleep, as long as she takes her medication. Appetite is reportedly very week after she wakes up. She will generally eat 2 regular meals/day. Daily hygiene is usually completed on an irregular basis. Frequently she does not bother to get dressed. She is currently living with her husband. In terms of routine household chores she is able to do simple food preparation, but has little motivation to do laundry and cleaning. She said that her husband hired a maid to do the cleaning. She is able to go shopping in the local area only if her husband goes with her. She is unable to travel independently by public transportation or car. She is able to independently manage her money. In terms of hobbies or interests, she enjoys playing games on her phone. In terms of social activity, she avoids dealing with other people as much as possible. She might occasionally go to a restaurant with her husband. She usually goes to bed around 11:00 PM, and reports little difficulty falling and staying asleep, as long as she takes her medication.

R. 432. Dr. Friedman offered the following diagnoses and prognosis:

Diagnosis: Based on the claimant's report, as well as on observations made during the interview, I would conclude that she is showing symptoms of a major depressive disorder and a panic disorder. During the interview she was able to communicate clearly and she was able to follow the topic of a conversation. Her social interaction skills were limited. She was able to comprehend and follow multi step directions. Her long-term memory appeared to be unimpaired. Short-term memory appeared to be mildly impaired. Working memory appeared to be mildly impaired. Ability to concentrate was impaired during the interview.

Prognosis is fair with continued outpatient psychiatric treatment. These conditions can be expected to last at least one year.

*Id.*

## V.    DISCUSSION

### A.        Step Three and Opinion Evidence

 Plaintiff challenges the ALJ's finding at step three of the sequential evaluation that Plaintiff's mental impairments do not meet or medically equal Listings 12.04 or 12.06, which address depressive, bipolar, and related disorders, and anxiety and obsessive-compulsive disorders, respectively. *Plaintiff's Brief*, ECF No. 14, pp. 16−30; *Plaintiff's Reply Brief*, ECF No. 16, pp. 1−9. Plaintiff's challenge is not well taken.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of  any of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120).

Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

As noted above, Listing 12.04 addresses depressive, bipolar, and related disorders, and Listing 12.06 addresses anxiety and obsessive-compulsive disorders. 20 C.F.R. §§ 12.04, 12.06 (eff. March 14, 2018 to April 1, 2021). To meet either of these listings, a claimant must meet the listing's paragraph A criteria and, in addition, the criteria of either paragraph B or paragraph C. *Id.* The paragraph B criteria are met when a claimant has an extreme limitation of one, or a marked limitation of two,[4] of the following four mental functional areas: the ability to understand, remember, or apply information; the ability to interact with others; the ability to concentrate, persist, or maintain pace; and the ability to adapt or manage oneself. *Id.* The paragraph C criteria are met if the claimant's mental disorder is "serious and persistent[,]" *i.e.*, if the claimant has a medically documented history of the existence of the disorder over a period of at least two years and there is evidence of both of the following: (1) "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder"; and (2) "[m]arginal adjustment," *i.e.*, the claimant has "minimal capacity to adapt to changes in [the claimant's environment] or to demands that are not already part of [his or her] daily life." *Id.*

Here, at step two, the ALJ determined that Plaintiff suffered the severe impairments of

---

[4] A "marked" limitation means that the claimant is seriously limited in her ability to function independently, appropriately, effectively and on a sustained basis in a specified area. *Id.* at § 12.00F2d. An "extreme" limitation means that the claimant is unable to function independently, appropriately, or effectively on a sustained basis in a specified area. *Id.* at § 12.00F2e.

bipolar disorder, personality disorder, anxiety, and depression. R. 22. The ALJ determined at step three that Plaintiff's impairments, whether considered singly or in combination, did not meet or medically equal any listing, including Listings 12.04 and 12.06,[5] reasoning as follows:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering or applying information, the claimant has a moderate limitation. The claimant reported needing reminders to take care of personal needs/grooming, reminders to take medications and reminders to go places. However, the medical evidence of record, including mental status reports, generally shows no serious deficits in long-term memory, short-term memory, insight, and judgment. Her long-term memory appeared unimpaired, short-term memory appeared to be mildly impaired, and working memory appeared to be mildly impaired. At times, insight and judgment were fair or limited. Overall, intellectual function was estimated to be within the low average/average range. Fund of information was somewhat limited. In addition, the claimant was able to give a good history of her medical and mental health history to treating and examining practitioners. The claimant has reported watching television and playing games on her phone daily for pleasure, which requires some memory and understanding. The claimant performs normal necessary activities of daily living, such as cooking simple meals, doing laundry, and shopping for groceries, which require a basic level of understanding, remembering, and applying information. (Ex. 4E, 9E, 4F, 6F, 7F)
>
> In interacting with others, the claimant has a moderate limitation. The claimant reported inability to leave her home unless she is accompanied and does not like to be around others in public. The medical evidence of record shows that the claimant generally interacted normally with all treating and examining practitioners. They often noted the claimant was pleasant, cooperative, and in no distress. Treating and examining practitioners did not observe the claimant to have serious deficiencies in eye contact, speech, or conversation. The claimant denied socializing with others, besides immediate family, both in and outside of the home. The claimant lived with

---

[5] Plaintiff does not challenge the ALJ's determination that she does not meet or medically equal Listing 12.08. *See generally Plaintiff's Brief*, ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 16.

family without serious problems. The claimant denied having problems getting along with family, friends, neighbors, and others. The claimant reported getting along well with authority figures. She denied ever being fired or laid off from a job because of problems getting along with other people. (Ex. 4E, 9E, 4F, 6F, 7F)

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The medical evidence of record shows the claimant generally did not complain to treating or examining practitioners of serious difficulty maintaining concentration, persistence, and pace. The claimant often reported adequate symptom control from psychiatric medications. Mental status examination results from her psychiatrist show the claimant had fair concentration and generally good attention span. On consultative exam, she was unable to perform serial sevens correctly, and was very slow. She was unable to perform serial threes correctly. She had difficulty concentrating on these tasks. She was able to spell "WORLD" correctly, and backwards. She was unable to calculate 6 times $.25, she was very slow, and the evaluator had to repeat the problem twice. However, she was able to follow multi-step directions. Additionally, treating and examining practitioners did not observe that the claimant was overly distractible. The claimant has reported watching television and playing games on her phone daily for pleasure, which requires some concentration and persistence. She has also reported doing a variety of daily tasks that require some concentration, persistence, and pace such as making simple meals, doing laundry, and grocery shopping. (Ex. 4E, 9E, 4F, 6F, 7F)

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant reported not performing personal care/grooming or dressing daily, as she does not leave her home often. However, the medical evidence of record shows the claimant did not usually complain about serious problems with adaptation and managing herself. Observations of treating and examining practitioners generally show the claimant had no deficiencies in hygiene and wore appropriate attire. She did not present [as] malodorous. She was frequently described as casual[ly] dressed. There is no evidence the claimant had serious problems being aware of normal hazards and taking appropriate precautions. The claimant was able to handle mental demands of parenting, although it caused some stress. The claimant had no problems with independently making plans and setting goals. The claimant handled her own activities of daily livings without significant assistance from others. (Ex. 4E, 9E, 4F, 6F, 7F)

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life.

16

R. 22−24.

Plaintiff challenges the ALJ's assessment of the paragraph C criteria of Listings 12.04 and 12.06, arguing that substantial evidence does not support that assessment. *Plaintiff's Brief*, ECF No. 14, pp. 16−30; *Plaintiff's Reply Brief*, ECF No. 16, pp. 1−9. Plaintiff first contends that the ALJ's findings regarding the paragraph C criteria are conclusory and lack "the requisite specificity." *Plaintiff's Brief*, ECF No. 14, pp. 17−18; *see also Plaintiff's Reply Brief*, ECF No. 16, pp. 1−3. This Court disagrees. Although the ALJ's consideration of the paragraph C criteria is brief, *see* R. 24, the decision, taken as a whole, supports the ALJ's conclusion in this regard. As set forth in more detail below, the ALJ detailed years of medical evidence relevant to the paragraph C criteria, which, fairly reading the decision as a whole, provides substantial support for the ALJ's paragraph C findings. R. 25−30; *see also Fullen*, 705 F. App'x at 124; *Jones*, 364 F.3d at 505; *cf. Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006) (finding that ALJ's conclusory statement at step three was harmless where, "in reviewing the voluminous medical evidence available to us, we found abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence").

Plaintiff next complains that the ALJ never specifically addressed Dr. Jain's opinion that Plaintiff's conditions met the paragraph C criteria. *Plaintiff's Brief*, ECF No. 14, pp. 19−21; *see also* R. 427, 429, 546, 548. Plaintiff's argument is not well taken. For claims, like Plaintiff's, which were filed after March 27, 2017, the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b).

18

"Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). However, "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how he considered all of the factors for all of the medical opinions and prior administrative medical findings in [the claimant's] case record. 20 C.F.R. § 404.1520c(b)(1).

In the present case, the ALJ specifically considered Dr. Jain's opinions and explained why he did not find them to be persuasive:

> The undersigned has considered the opinions from Dr. Jain, the claimant's psychiatrist, dated December 7, 2018, March 22, 2019, and March 27, 2020. The doctor opined moderate to marked limitations in the areas of understanding and memory; sustained concentration and persistence; social interaction; and adaptation. The opinions are not persuasive because they are not consistent with or supported by the medical evidence of record, including his own treatment notes that show some improvement with medication although there is some waxing and waning of symptoms. The opinions are unsupported by the doctor's own mental status examinations of the claimant, which are generally normal and demonstrated no significant abnormality such as hallucinations, delusions, or suicidal ideation. The opinions are inconsistent with the opinion and the thorough mental status evaluation of the consultative examiner, Dr. Friedman. The opinions are also inconsistent with the mental status findings from the claimant's therapist and with the longitudinal treatment history overall. While this psychiatrist has treated the claimant for many years, the claimant has been able to work with these impairments and there is no indication of any aggressive treatment such as intensive outpatient treatment or psychiatric hospitalizations during the alleged period of disability. (Ex. 3F [R. 426−29, containing opinions dated December 7, 2018], 6F [R. 446−51, containing opinions dated March 22, 2019], 8F [R. 544−46, containing opinions dated March 27, 2020])

R. 29. Although the ALJ did not expressly discuss Dr. Jain's opinion that Plaintiff met the paragraph C criteria of Listings 12.04 and 12.06, any error in this failure is, at most, harmless.

The ALJ specifically cited the December 7, 2018, and March 27, 2020, opinions which contained Dr. Jain's opinion in that regard. R. 29, 427, 429, 546. The ALJ explained his reasoning for finding those opinions to be unpersuasive, R. 29, and discussed medical evidence relevant to these opinions—including evidence relevant to the opinion that Plaintiff met the paragraph C criteria—when assessing Dr. Jain's opinions and throughout the decision. R. 23−29. Even assuming that Plaintiff's mental conditions had been "serious and persistent" for a period of more than two years, the Court is not persuaded that the record establishes the marginal adjustment that is required by paragraph C of the Listings, *i.e.*, that Plaintiff had a minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life. 20 C.F.R. §§ 12.04C2, 12.06C2. "Marginal adjustment" is met

> when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. § 12.00G2c (eff. March 14, 2018 to April 1, 2021); *see also id*. at § 12.00D1 (providing examples of psychosocial supports, structured settings, and living arrangements, such as (a) when the claimant receives "help from family members or other people who monitor [the claimant's] daily activities and help[s] [the claimant] to function[,]" such as when family members administer the claimant's medications, remind the claimant to eat, shop for the claimant and pay the claimant's bills, or change their work hours so the claimant is never home alone"; (b) participation "in a special education or vocational training program, or a psychosocial rehabilitation day treatment or community support program" where the claimant receives training in daily living and entry-level work skills; (c) participation "in a sheltered, supported, or

transitional work program, or in a competitive employment setting with the help of a job coach or supervisor"; (d) receiving "comprehensive '24/7 wrap-around' mental health services while living in a group home or transitional housing, while participating in a semi-independent living program, or while living in individual housing"; (e) living "in a hospital or other institution with 24–hour care"; (f) receiving "assistance from a crisis response team, social workers, or community mental health workers who help [the claimant] meet [his or her] physical needs, and who may also represent [the claimant] in dealings with government or community social services"; (g) living alone and not receiving any psychosocial support(s), but the claimant has "created a highly structured environment by eliminating all but minimally necessary contact with the world outside [the claimant's] living space").

In the case presently before the Court, the ALJ discussed at steps three and four the objective evidence relevant to the paragraph C criteria. For example, in addressing the paragraph B criteria, the ALJ noted that Plaintiff performed normal necessary activities of daily living, such as cooking simple meals, doing laundry, and shopping for groceries. R. 23−24. She also watched television and played games on her phone. R. 23. Treating and examining physicians generally noted no deficiencies in Plaintiff's hygiene and attire. R. 24. She was able to handle the mental demands of parenting despite some stress. *Id.* She had no problem with independently making plans and setting goals. *Id.* At step four, the ALJ noted treating and examining notes from 2017 and 2018 that reflected, *inter alia*, goal-directed thought processes and speech and Plaintiff's denial of delusions, hallucinations, and suicidal ideations. R. 25−26. The ALJ further noted that Plaintiff has not required psychiatric hospitalization; often reported doing well, doing better, or doing ok; that treatment notes showed relatively normal and stable mental status examinations with normal/good appearance, demeanor, attire, eye contact, behavior, speech, thought

processes, impulse control, memory, and judgment. R. 28. The ALJ also pointed out that treatment notes showed improvement of symptomology overall. R. 28–29. The ALJ went on to find "persuasive" the opinions of the state agency reviewing physicians, including, *inter alia*, the findings that Plaintiff could adapt to basic changes and was capable of independent, goal-directed behavior while completing simple routing tasks, and that Plaintiff did not meet the paragraph C criteria of the Listings. R. 28, 73, 77, 87, 91. Accordingly, and fairly reading the decision as a whole, this evidence constitutes substantial support for the ALJ's finding that Plaintiff did not meet paragraph C2 criteria of Listings 12.04 and 12.06. *See* 20 C.F.R. §§ 12.04C2, 12.06C2; *Fullen v. Comm'r of Soc. Sec.*, 705 F. App'x 121, 124 (3d Cir. 2017) ("In this case, like *Jones*, the ALJ's decision, read as a whole, illustrates that the ALJ's conclusion that Fullen did not meet the requirements for any Listing . . . was supported by substantial evidence."); *McCormack v. Kijakazi*, No. CV 21-1198, 2022 WL 1912927, at *18 (W.D. Pa. June 3, 2022) (finding that the ALJ "sufficiently discussed the paragraph C(2) criteria and supported the conclusion that McCormack has achieved more than 'marginal adjustment' with evidence of record" where the claimant "dresses and bathes himself without help; prepares simple meals; plays multiple instruments; plays video games; goes grocery shopping; mows the lawn; works; participates in social events, e.g., playing cards and performing in the band at church; attends therapy; plays music; and takes walks with friends"); *Dana H. v. Comm'r of Soc. Sec.*, No. 6:20-CV-6592 CJS, 2022 WL 969529, at *9 (W.D.N.Y. Mar. 31, 2022) (finding that substantial evidence supported the ALJ's conclusion that the claimant did not meet the paragraph C criteria where the claimant's ability to perform all personal care activities without assistance or reminders, cook, perform yard work, perform small repair jobs, drive a car, shop for groceries once every other week, travel to substance abuse treatment and go out with a girlfriend "shows

that he achieved more than marginal adjustment from his ongoing treatment"); *Hirst v. Kijakazi*, No. CV 20-1756, 2021 WL 5989111, at *4 (W.D. Pa. Dec. 17, 2021) (finding that the claimant did not satisfy the requirements of paragraph C1 or C2 of Listing 12.04 where the claimant's "symptoms improved with medication; she was able to engage in many ordinary daily activities without signification limitations; she had only moderate limitations with respect to her ability to understand, remember or apply information; to interact with others; to concentrate, persist, or maintain pace; or to adapt or manage oneself" and where one physician opined the claimant had only moderate limitations in functioning and another physician found that the claimant could perform a range of unskilled work); *Thayer v. Comm'r of Soc. Sec.*, No. 2:20-CV-12693, 2021 WL 7448499, at *13 (E.D. Mich. Sept. 24, 2021), *report and recommendation adopted Thayer v. Comm'r of Soc. Sec.*, No. 220CV12693TGBPTM, 2022 WL 476068 (E.D. Mich. Feb. 16, 2022) ("While the ALJ provided a cursory discussion of paragraph C . . . the ALJ's finding is nonetheless supported by substantial evidence" where, *inter alia*, "the record is replete with evidence that Plaintiff responded well to a modest and consistent treatment regimen comprised of medication and therapy and that he could function outside of the home without substantial psychosocial support" and other portions of the ALJ decision "cited the non-examining consulting psychiatrists, who opined that Plaintiff did not satisfy the requirements of paragraph C"); *Thornton v. Saul*, No. 4:20-CV-01420-JRA, 2021 WL 3934332, at *15 (N.D. Ohio June 21, 2021), *report and recommendation adopted sub nom. Thornton v. Comm'r of Soc. Sec.*, No. 4:20CV1420, 2021 WL 4025192 (N.D. Ohio Sept. 2, 2021) (concluding that substantial evidence supported the ALJ's finding that Plaintiff did not meet the paragraph C criteria where, *inter alia*, the state agency psychological consultants opined that the claimant did not meet the paragraph C criteria); *Guzman v. Colvin*, No. 15-6564, 2016 WL 4745175, at *5–6 (D.N.J. Sept. 12, 2016)

23

(finding that "[t]he ALJ's explanation, while brief, is sufficient to permit meaningful review when considered in the context of the opinion as a whole" where the ALJ stated that "'[t]he undersigned has also considered whether the 'paragraph C' criteria were satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria'" and where the ALJ considered evidence relevant to the paragraph B criteria at step four).

Plaintiff nevertheless insists that she meets the criteria of paragraph C2, pointing to evidence that she believes supports her position. *Plaintiff's Brief*, ECF No. 14, pp. 21–30; *Plaintiff's Reply Brief*, ECF No. 16, pp. 4–6. However, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). This Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose its own factual determination. *See Chandler*, 667 F.3d at 359; *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Circ. 2014) (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

In short, and fairly reading the ALJ's decision as a whole, this Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments do not meet or medically equal any listing, including Listings 12.04 and 12.06.

B.      **RFC and Opinion Evidence**

Plaintiff also contends that the ALJ erred in crafting Plaintiff's RFC. *Plaintiff's Brief*,

ECF No. 14, pp. 30–36; *Plaintiff's Reply Brief*, ECF No. 16, pp. 9–12. Plaintiff specifically

argues that the ALJ erred in considering the opinions of Marc Friedman, Ph.D., and the

reviewing state agency psychological consultants. *Id.* Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §

404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with

determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler*, 667 F.3d at 361

("The ALJ—not treating or examining physicians or State agency consultants—must make the

ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's

RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d

Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v.

Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d

Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is

supported by medical evidence, but is opposed by other evidence in the record" but "[t]his

discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported

reason" and stating that "the ALJ also has the discretion to include a limitation that is not

supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to

perform a full range of work at all exertional levels but with the following nonexertional

limitations:

> no climbing of ladders ropes or scaffolds; and no exposure to hazardous machinery
> or unprotected heights. Able to understand, remember, and carry out simple tasks.
> No fast-paced production. Low stress work defined as only occasional decision-
> making and only occasional changes in the work setting; work where others may

> be around but this person is more off by their self [sic]; more than minimal but less than occasional interaction with coworkers and supervisors; and no interaction except incidental with the public.

R. 24. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, psychiatric treating notes from September 2017 in which Plaintiff reported feeling ok and her mental status exam indicated that her appearance, attire, eye contact, behavior, and speech were good; that she was cooperative and with euthymic mood and appropriate affect; that her thought processes were goal directed and without reported delusions, hallucinations, and suicidal ideations; that her impulse control was good, and her memory, attention span, insight, and judgment and concentration were fair, and she refilled her psychiatric medications and denied any medication side effects; treatment notes from November 2017 that reflect reported increased anxiety with anxious and worried mood and fair concentration, but the remainder of her exam, including memory, attention, judgement, insight, thought process, and insight, was within normal limits; in December 2017, Plaintiff reported doing better and having decreased depression; treatment notes from 2018 indicated that Plaintiff continued to do well on her medication regimen, and she frequently reported doing okay; mental status exams conducted in January, February, April, July, August, September and October of 2018 were within normal limits, Plaintiff's concentration was fair, but her appearance, attire, eye contact, behavior, and speech were good; she was cooperative and with euthymic mood and appropriate affect; her thought processes were goal directed and she denied delusions, hallucinations, and suicidal ideations; her impulse control, memory, attention span, insight, and judgment were good; in November 2018, Plaintiff reported anxiety, but treatment notes indicated that Plaintiff presented with a fair mood and congruent affect, and she reported feeling optimistic about her future, denied thoughts of self-harm, presented with fair insight and judgment, and was receptive and

open to treatment; she was well engaged in therapy sessions and was receptive to her therapist's

suggestions; Dr. Friedman's December 2018 consultative examination, which revealed no sign

of a thought disorder, an extremely anxious mood with a severely constricted affect, but findings

that Plaintiff denied hallucinations, delusions, and suicidal ideation or intent and was able to

follow multi step directions, manifested adequate persistence in completing tasks, an unimpaired

long-term memory and a mildly impaired  short-term memory, working memory, and

concentration; Dr. Friedman's diagnosed a major depressive disorder and a panic disorder;

treatment notes in January and February 2019 indicated that Plaintiff continued to do well with

medications and treatment; Dr. Jain's March 2019 treatment notes indicating that Plaintiff was

fully alert and oriented with no suicidal ideation or homicidal ideation reported, no sign of

paranoia, anxious and depressed mood was but appropriate affect with a casual appearance and

quiet behavior, and fair concentration and memory, average intellect, and fair judgment; findings

on an April 17, 2019, mental status exam that revealed tense and withdrawn behavior with a sad,

depressed, anxious, and worried mood, but appropriate affect, fair concentration, and a normal

remainder of exam; findings in May 2019 of a sad, anxious, and worried mood, but fair

concentration, attention span, insight, and judgment; findings of improved symptoms in June

2019 and the notation that, in July 2019, Plaintiff reported doing well despite having anxious

mood and tense behavior. Plaintiff reported that she was doing better in September 2019, and her

symptomatology was mild; in November 2019, Plaintiff's mental status exam was within normal

limits with the exception of fair concentration and insight; treatment notes from 2020 indicated

that Plaintiff's depression and anxiety remained stable with medication; a mental status exam on

January 15, 2020, was within normal limits with the exception of fair concentration, attention

span, and insight, and she reported doing better; in February and March 2020, Plaintiff again

reported decreased depression and anxiety and her mental status exams were within normal limits with the exception of fair concentration and insight. R. 25–27. The ALJ also found persuasive the state agency psychological consultants' opinions, including, *inter alia*, that Plaintiff could understand, remember, and carry out simple routine tasks; sustain the minimum social demands of simple tasks, including accepting supervision; relate appropriately to coworkers but should not deal directly with public; and adapt to basic changes. R. 28. The ALJ went on to explain the RFC determination as follows:

> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the opinions from the State Agency psychological consultants, the consultative psychological evaluation and opinion from Dr. Friedman, psychiatric treating notes, findings on mental status examinations, and other medical evidence of record, as detailed above. Although the medical evidence of record does not support the claimant is as functionally limited to the extent she alleged, the residual functional capacity has been reduced to account for her supported impairments/symptoms and supported functional limitations. Accordingly, the undersigned finds that the claimant retains the capacity to function within the parameters of the above residual functional capacity.

R. 29. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges this determination on a number of grounds. Plaintiff first complains that the ALJ found Dr. Friedman's opinion to be persuasive but erred in failing to then incorporate that doctor's findings regarding Plaintiff's concentration and social limitations. *Plaintiff's Brief*, ECF No. 14, pp. 31–34; *Plaintiff's Reply Brief*, ECF No. 16, p. 10. Plaintiff specifically contends that "the ALJ failed to incorporate any concentration or memory [limitations] into the RFC assessment[,]" arguing that the limitations of simple tasks, no fast-paced production, only occasional changes in the work setting, and low stress work defined as only occasional decision-making and only occasional change in work setting do not address "Dr.

28

Friedman's findings of concentration limitations." *Plaintiff's Brief*, ECF No. 14, p. 32–33. Plaintiff goes on to argue that the ALJ "also failed to account for the extent of the social limitations found by Dr. Friedman" and that the RFC limitations—*i.e.,* limiting Plaintiff to "work where others may be around but this person is more off by their self [sic]; more than minimal but less than occasional interaction with coworkers and supervisors; and no interaction except incidental with the public"—did not account for Plaintiff's social limitations. *Id*. at 33–34.

Plaintiff's arguments are not well taken. As detailed above, Dr. Friedman found, *inter alia*, that Plaintiff's "[a]bility to concentrate was impaired during the interview[,]" but that Plaintiff "was able to follow the topic of conversation[,]" "able to comprehend and follow multi step directions[,]" and she had an unimpaired long-term memory and only "mildly impaired" short-term and working memory. R. 432. Dr. Friedman did not explain what he meant by the term "impaired" ability to concentrate. In finding at step three that Plaintiff's ability to concentrate, persist, or maintain pace was moderately limited—a finding that Plaintiff apparently does not challenge—the ALJ specifically relied on Dr. Friedman's consultative examination findings. R. 23–24. In crafting the RFC, the ALJ limited Plaintiff to, *inter alia*, an ability to "understand, remember, and carry out simple tasks. No fast-paced production. Low stress work defined as only occasional decision-making and only occasional changes in the work setting[.]" R. 24. These limitations sufficiently accommodate Plaintiff's impairments in concentration. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208–14 (3d Cir. 2019) (finding that a "simple tasks" limitation can be said to fairly reflect a claimant's "moderate" difficulties in concentration, persistence, or pace where there is a "valid explanation" for such limitation); *Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. 2011) (finding "hypothetical question accurately conveyed all of" the plaintiff's limitations where the hypothetical individual could understand, remember, and

carry out simple instructions, which reflected the plaintiff's moderate difficulties in concentration); *Menkes v. Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration."); *Berg v. Berryhill*, No. CV 17-04452, 2019 WL 3387209, at *6 (E.D. Pa. July 26, 2019) (finding that RFC limitation to no "fast-paced production environment" adequately accommodated Plaintiff's moderate limitations in concentration, persistence, or maintaining pace).

Plaintiff cites to no record evidence that supports her apparent assertion that Dr. Friedman's finding of an "impaired" ability to concentrate requires different or more restricted concentration limitations than those already included in the ALJ's RFC, nor does she identify what those limitations should be, or otherwise explain how a remand of this action would lead to a different RFC. *See generally Plaintiff's Brief*, ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 16. Although Plaintiff, who bears the burden at step four, complains in reply that the Commissioner does not explain how limitations to simple tasks and no fast-paced production support a "finding that [Plaintiff] could sustain concentration in order to accomplish this on a regular and continuing basis[,]" she points to no medical opinion that she was unable to sustain work activities on a regular and continuing basis. *Plaintiff's Reply Brief*, ECF No. 16, pp. 9–10. Notably, Dr. Friedman never opined that Plaintiff was unable to sustain concentration on a regular and continuing basis; he simply opined that Plaintiff had an "impaired" ability to concentrate. R. 432. To the extent that Plaintiff suggests that the Court should adopt her interpretation of Dr. Friedman's limitation, the Court declines Plaintiff's invitation to re-weigh the evidence or to impose its own factual determinations on this record. *See Chandler*, 667 F.3d

at 359; *Zirnsak*, 777 F.3d at 611 (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

Turning next to Plaintiff's challenge that the ALJ did not account for Dr. Friedman's opined social limitations, *Plaintiff's Brief*, ECF No. 14, pp. 33–34, this Court again disagrees. As detailed above, Dr. Friedman noted that Plaintiff's social interaction skills were simply "limited." R. 431–32. The ALJ crafted a RFC limiting Plaintiff to "work where others may be around but this person is more off by their self [sic]; more than minimal but less than occasional interaction with coworkers and supervisors; and no interaction except incidental with the public." R. 24. The Court finds that this RFC determination is consistent with Dr. Friedman's finding that Plaintiff had "limited" social interaction skills. To the extent that Plaintiff suggests that this finding requires greater or different social limitations than those in the RFC found by the ALJ, Plaintiff does not identify any such limitations. *See Plaintiff's Brief*, ECF No. 14, p. 33. While Plaintiff goes on argue that opinion evidence from Dr. Jain and the state agency psychological consultants "confirm[] limitations [in] interacting with others[,]" *id*. at 33–34 (citing R. 76, 90, 449–50), the Court is not persuaded that any such support requires remand. Plaintiff first relies on Dr. Jain's March 2019 opinion that Plaintiff's social interaction ability is "[l]imited" because she "stays to herself – social withdrawal" and, as to daily activities, "most of the work is done by her husband[.]" R. 449–50. However, for the reasons previously discussed, the ALJ found Dr. Jain's opinions not persuasive. R. 29. In any event, even if the ALJ credited Dr. Jain's opinion in this regard, Plaintiff has not articulated how the RFC actually found by the ALJ is inconsistent with this opinion. *See Plaintiff's Brief*, ECF No. 14, pp. 33–34. Accordingly, the Court finds that the ALJ's RFC limiting Plaintiff to "work where others may be around but this person is more off by their self [sic]; more than minimal but less than occasional interaction with coworkers and

31

supervisors; and no interaction except incidental with the public[,]" R. 24, adequately accommodates Dr. Jain's opinion that Plaintiff's social interaction skills are "[l]imited."

Plaintiff also points to the state agency psychological consultants' opinion that Plaintiff is markedly limited in her ability to interact with the general public as support for Dr. Friedman's opinion that that Plaintiff's social interaction ability is limited. *Plaintiff's Brief*, ECF No. 14, p. 34 (citing R. 76, 90). However, these consultants explained Plaintiff's limitations in social interaction by specifying, *inter alia*, that Plaintiff "is not able to deal *directly* with the public." R. 77, 91 (emphasis added). Plaintiff has not explained how the RFC actually found by the ALJ fails to accommodate this opinion. *See Plaintiff's Brief*, ECF No. 14, p. 34; *see also Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). Based on this record, the Court is not persuaded that the state agency psychological consultants' opinion in this regard is inconsistent with the ALJ's RFC for "no interaction except *incidental* with the public." R. 24; *see also Sonja N. v. Berryhill*, No. 17-CV-617-JED-FHM, 2019 WL 10888661, at *3 (N.D. Okla. Jan. 15, 2019), *report and recommendation adopted sub nom. Sonja J. N. v. Saul*, No. 17-CV-617-JED-FHM, 2020 WL 5017765 (N.D. Okla. Aug. 25, 2020) ("The undersigned finds that the ALJ appropriately accounted for Plaintiff's marked limitation (substantial loss in the ability to effectively function) in her ability to interact appropriately with co-workers and supervisors by limiting her to *only incidental* contact with co-workers and supervisors.") (emphasis added).

Plaintiff also contends that the ALJ erred in finding the state agency psychological consultants' opinions persuasive. *Plaintiff's Brief*, ECF No. 14, pp. 34−36; *Plaintiff's Reply Brief*, ECF No. 16, pp. 11−12. This Court disagrees. In finding those opinions persuasive, the ALJ reasoned as follows:

> The undersigned has considered the disability determination explanations from the State Agency psychological consultants, wherein they opined able to understand, remember, and carry out simple routine tasks; sustain the minimum social demands of simple tasks settings including accepting supervision; can relate appropriately to coworkers but should not deal directly with public; and can adapt to basic changes. The opinion is persuasive because it is supported by the mental consultative evaluation from Dr. Friedman, psychiatric treatment notes, and relatively normal mental status exams from the psychiatrist, Dr. Friedman, and claimant's therapist. The opinion is also supported by and consistent with the claimant's treatment history, which has not including any psychiatric hospitalizations since the alleged onset date.

R. 28.

Plaintiff contends that substantial evidence does not support this assessment because "Dr. Friedman's report documents more limitations than [those] found by the State agency psychological consultants and the ALJ[,]" noting that "Dr. Friedman did not differentiate between limitations interacting with the public as compared to others, as the State agency psychological consultant did. *Compare* (Tr. 321) with (Tr. 76, 90)." *Plaintiff's Brief*, ECF No. 34. Plaintiff's argument is not well taken. As a preliminary matter, one of Plaintiff's cited pages, R. 321, is not evidence from Dr. Friedman or the state agency psychological consultants; rather, it is a June 2006 note signed by Richard Miller, M.D. *See id.* In any event, and as previously explained, Dr. Friedman concluded that Plaintiff's ability to engage in social interaction was simply "limited." R. 432. Plaintiff has not persuaded this Court that Dr. Friedman's finding in this regard is more restrictive than, or inconsistent with, the more specific state agency findings that differentiated between Plaintiff's ability to interact with the public (marked limitations) and

ability to interact with supervisors and co-workers (moderate limitations). R. 76, 90.

Plaintiff next challenges the ALJ's observation that Plaintiff has not been hospitalized for psychiatric problems, arguing that there is no requirement that claimants have "psychiatric hospitalizations for mental impairments in order to qualify for benefits." *Plaintiff's Brief*, ECF No. 14, pp. 34–35; *see also Plaintiff's Reply Brief*, ECF No. 16, p. 11. However, as the Commissioner explains, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 15, p. 16, the ALJ did not find that Plaintiff must have been hospitalized to qualify for benefits. Rather, the ALJ found that Plaintiff's treatment history—which included, among other things, no psychiatric hospitalizations—supported and was consistent with Dr. Friedman's opinion. R. 28. The Court finds no error with the ALJ's observation in this regard. *See* 20 C.F.R. § 404.1520c(b), (c)(1), (2); *Sanchez v. Kijakazi*, No. 1:21-CV-36, 2022 WL 906046, at *12 (M.D. Pa. Mar. 28, 2022) (discussing with approval the ALJ's finding that "the state agency expert opinions were persuasive because those opinions were more congruent with [the claimant's] longitudinal treatment history in 2019, which was marked by conservative pain management treatment, test results which revealed only mild degenerative disc disease, and counseling" and that "as the ALJ aptly noted, there was no evidence of[,]" *inter alia*, hospitalization); *cf. Wright v. Comm'r of Soc. Sec.*, No. 3:20-CV-100, 2022 WL 1063157, at *5 (W.D. Pa. Apr. 8, 2022) (finding that the ALJ properly considered the supportability and consistency of "medical opinion in relation to other objective evidence and medical opinions" where the ALJ incorporated her prior discussion of, *inter alia*, "objective findings and treatment history").

Plaintiff also attacks the ALJ's characterization of the state agency opinions as persuasive, contending that those opinions were outdated and that those consultants lacked the benefit of (1) Dr. Jain's March 2019 opinions, R. 446–51, and (2) "92 pages of notes from Dr.

Jain, which were added to the record at the hearing level in March 2020," R. 453–543. *Plaintiff's Brief*, ECF No. 14, p. 35; *see also Plaintiff's Reply Brief*, ECF No. 16, pp. 11–12. Plaintiff's arguments are not well taken. State agency physicians are experts in Social Security disability programs. SSR 96-6p. An ALJ may rely on a state agency physician's findings and conclusions even where there is a lapse of time between the time at which they rendered their opinions and the ALJ's decision and where additional medical evidence has been submitted after they rendered their opinions. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available."). Accordingly, in this case, the ALJ did not err in finding the state agency psychological consultants' opinions persuasive simply because there was a lapse of time between their opinions and Dr. Jain's March 2019 report and the "92 pages of notes from Dr. Jain." *See id*.

To the extent that Plaintiff points to specific findings in Dr. Jain's March 2019 report, the Court is not persuaded that the ALJ erred in considering the state agency opinions. As a preliminary matter, the ALJ explained why Dr. Jain's opinions were not persuasive. R. 29. In any event, Plaintiff does not explain how Dr. Jain's findings that Plaintiff "has mood swings with manic and depressive episodes and decreased sleep which have a poor impact on her functioning,

which can occur anytime and are only ended by increasing her medication" and that Plaintiff "has limitations in social interactions in [t]hat she has social withdrawal and stays to herself and most of the work is done by her husband," *Plaintiff's Brief*, ECF No. 14, p. 35 (citing R. 448–50), result in any specific different or additional limitations not already included in the RFC. *See Padgett*, 2018 WL 1399307, at *2. Nor does Plaintiff explain why the ALJ's RFC does not adequately accommodate these findings. *See Plaintiff's Brief*, ECF No. 14, p. 35. Instead, Plaintiff simply speculates that the state agency opinions "may have differed" had they considered Dr. Jain's March 2019 report. *Id*. As previously discussed, an ALJ need include in the RFC only "credibly established" limitations. *Rutherford*, 399 F.3d at 554.

Similarly unavailing is Plaintiff's reference to "92 pages of notes from Dr. Jain[.]" *Plaintiff's Brief*, ECF No. 14, p. 35 (citing R. 453–543). Plaintiff never identifies what specific evidence in these notes would have changed the state agency opinions or otherwise undermined the ALJ's reliance on the state agency opinions. *See id*. Plaintiff, who bears the burden of proof at step four, offers no substantive analysis to support this conclusory assertion. *See id*. The Court therefore finds no merit in Plaintiff's undeveloped argument in this regard. *See Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted).

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of the opinions of the state agency psychological consultants.

C.       **Subjective Complaints**

Plaintiff also challenges the ALJ's consideration of her subjective complaints. *Plaintiff's Brief*, ECF No. 14, pp. 36−39; *Plaintiff's Reply Brief*, ECF No. 16, p. 12.  Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

37

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[6]

     Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints, R. 25, and found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support his findings. R. 25−29. The ALJ also went on to explain as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are not entirely supported by the medical evidence of record. The record shows consistent

---

[6]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

psychiatric treatment and medication management, which is supportive of the claimant's allegations; however, these treating notes show improvement of mental symptomology overall. Since the alleged onset date, the claimant has consistently denied hallucinations, preoccupations, delusions, and suicidal/homicidal ideations. She has not required any voluntary or involuntary psychiatric hospitalizations. She often reported doing well, doing better, or doing ok. Psychiatric treating notes show relatively normal and stable mental status examination findings with normal/good appearance, demeanor, attire, eye contact, behavior, speech, thought process, impulse control, memory and judgment. However, mood, affect, concentration and insight have been variable. Severity of her symptomology has generally been rated mild or unspecified and occasionally moderate in nature. The claimant's psychiatric medications have been relatively unchanged. At the time of onset, she was prescribed Seroquel, Lamictal and Klonopin. However, Lamictal was discontinued and she has remained stable on Seroquel and Klonopin. The claimant has consistently denied side effects from these medications. The claimant engaged in some individual psychotherapy but discontinued this on her own, despite testifying that it was helpful. Accordingly, the residual functional capacity more than accommodates the claimant's complaints as it is limited to simple tasks; no fast paced production; low stress work; occasional decision-making; occasional changes; and limited social interaction. Overall, the medical evidence of record does not support the claimant's allegations of disabling mental symptoms or functional limitations to the extent purported.

R. 28. In the view of this Court, the record in this action provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983); *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff challenges the ALJ's finding in this regard, arguing that the ALJ "failed to mention" that Karin Towers, Ph.D., the state agency psychological consultant at the initial level of review, found that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of her symptoms are substantiated by the objective medical evidence. *Plaintiff's Brief*, ECF No. 14, p. 36 (citing R. 75, 77–78). However, any error in this regard is, at most, harmless where Dr. Towers nevertheless concluded that Plaintiff was not disabled. R. 79.

Plaintiff next complains that "[t]he ALJ also failed to consider the regulatory factors, as required, or provide any support for his finding discrediting" Plaintiff's statements. *Plaintiff's*

*Brief*, ECF No. 14, p. 36; *see also Plaintiff's Reply Brief*, ECF No. 16, p. 12. This Court

disagrees. As discussed earlier in this Opinion and Order, the ALJ detailed years of record

evidence regarding Plaintiff's impairments and explained why this objective evidence did not

support the severity or limiting effects of Plaintiff's subjective complaints. R. 25–29. The ALJ

specifically considered Plaintiff's daily activities, which included cooking simple meals, doing

laundry, shopping for groceries, watching television, playing games on her phone for pleasure;

Plaintiff's improvement with medication management; the fact that she reported no side effects

from her medication; and the fact that Plaintiff participated in psychotherapy "but discontinued

this on her own, despite testifying that it was helpful." *Id.*[7]; *see also* 20 C.F.R. § 404.1529(c)(3).

In any event, "[t]he fact that the ALJ did not discuss all of the § 404.1529 factors does not

warrant remand, given that his credibility determination was supported by substantial evidence."

*Lewis v. Comm'r of Soc. Sec.*, No. CV 15-1587, 2016 WL 4718215, at *7 (D.N.J. Sept. 9, 2016);

*see also Mason v. Colvin*, No. 15-1861, 2015 WL 6739108, at *6 (D.N.J. Nov. 3, 2015) ("The

list [of factors contained in 20 C.F.R. § 404.1529(c)] is not comprehensive, nor is it mandatory

for ALJs to go through each factor on the list in their opinions.") (citing 20 C.F.R. §

404.1529(c)(3)); *Ladd v. Astrue*, No. CIV.A. 12-4553, 2014 WL 2011638, at *1 n.2 (E.D. Pa.

May 16, 2014) ("However, neither this policy statement [in SSR 96-7p], nor § 404.1529(c)(3)

(the governing regulation), mandates a specific finding as to each of the seven factors listed in §

404.1529(c)(3)(i)–(vi). The regulatory framework provides instead that an ALJ must consider

---

[7] In this respect, Plaintiff's reliance on *Frankowski v. Berryhill*, No. 2:16-cv-8846, 2018 U.S.
Dist. LEXIS 138081 (D.N.J. Aug. 14, 2018), in which the court observed that the ALJ cited no
evidence as to the claimant's activities of daily living, his medication, or the other factors
included in § 416.929(c)(3), is inapposite.

'objective medical evidence,' as well as the claimant's 'own statements' and 'other relevant evidence in the case record.'") (citing SSR 96–7p).

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn,* 717 F.2d at 873); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action.

### D.    Step Five

Finally, Plaintiff challenges the ALJ's s step five determination, arguing that the Commissioner failed to carry his burden at that stage because the hypothetical questions posed to the vocational expert, which included the ALJ's RFC determination, failed to include all of Plaintiff's claimed limitations. *Plaintiff's Brief*, ECF No. 14, pp. 39–40.

At step five, the ALJ must decide whether the claimant, considering her RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Unlike at the first four steps of the sequential evaluation, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir.

2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id.* at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny*, 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id.* (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's

42

impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

In the case presently before the Court, the hypothetical posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 24, 62−64. The vocational expert responded that the jobs of assembler and masker of electronics exist in significant numbers and could be performed by such an individual. R. 64. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical questions is that all her alleged impairments were not addressed, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

For all these reasons, then, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  June 14, 2022                    *s/Norah McCann King*
                                        NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE